UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
____

DALLAS DYSON,

        Petitioner,                    Case No. 1:22-cv-684

v.                                            Honorable Sally J. Berens

BRYAN MORRISON,

        Respondent.
_____/

**OPINION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Petitioner consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 3.) Section 636(c) provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings in a jury or nonjury civil matter and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c).

This case is presently before the Court for preliminary review pursuant to 28 U.S.C. § 2253 and Rule 4 of the Rules Governing § 2254 Cases. The Court is required to conduct this initial review prior to the service of the petition. Rule 4, Rules Governing § 2254 Cases.

Service of the petition on the respondent is of particular significance in defining a putative respondent's relationship to the proceedings. "An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any

procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.

Rule 4, by requiring courts to review and even resolve the petition before service, creates a circumstance where there may only be one party to the proceeding—the petitioner. Because Respondent has not yet been served, the undersigned concludes that Respondent is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review of the petition. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1] Petitioner's consent is sufficient to permit the undersigned to conduct the Rule 4 review.

The Court conducts a preliminary review of the petition under Rule 4 to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing § 2254 Cases; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134,

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436–37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court will dismiss the petition for failure to raise a meritorious federal claim.

## Discussion

I.  **Factual Allegations**

Petitioner Dallas Dyson is incarcerated with the Michigan Department of Corrections at the Lakeland Correctional Facility (LCF) in Coldwater, Branch County, Michigan. On January 6, 2020, Petitioner pleaded *nolo contendere* in the Kent County Circuit Court to one count of third-degree criminal sexual conduct, in violation of Mich. Comp. Laws § 750.520d. In exchange for Petitioner's plea, the Court dismissed one count of first-degree criminal sexual conduct and a fourth habitual offender enhancement that would have required a minimum sentence of 25 years. On February 17, 2020, the court sentenced Petitioner to a prison term of 6 years, 6 months to 15 years.

Petitioner is represented by counsel in these proceedings and, although Petitioner filed a completed form petition,[2] a separate typewritten petition, and a supporting memorandum of law, he provides no facts regarding the crime of which he was convicted, few details regarding the procedural history of the state court proceedings, and none of the state court dockets or filings.

---

[2] Petitioner supplied a generally completed form petition, but it is not the court-approved form. The court-approved from is not required unless the petitioner is proceeding *pro se*.

3

Nonetheless, the register of actions for the Kent County Circuit Court and the docket information for the Michigan appellate courts are publicly available.[3]

The trial court register of actions indicates that Petitioner was bound over to the Kent County Circuit Court on October 25, 2018. The initial proceeding, Case No. 18-09639-FC, was assigned to Judge George Jay Quist. Scheduled trial dates were adjourned, initially to permit further plea negotiations, but on April 22, 2019, and July 3, 2019, trial dates were adjourned due to "unavailability or FTA [failure to appear] of witness." *See* https://www.accesskent.com/CNSearch/searchROA.action?caseID=1651606&criminal=true (visited July 30, 2022). On the next date scheduled for trial, August 12, 2019, the prosecutor petitioned for entry of an order of *nolle prosequi*, presumably because, once again, the witness failed to appear. The court entered the order that day.

The next day, the prosecutor commenced a new prosecution that was ultimately bound over to the circuit court as Case No. 19-07923-FC. *See* https://www.accesskent.com/CNSearch/searchROA.action?caseID=1699652&criminal=true (last visited July 30, 2022). The case was assigned to Judge Paul Sullivan. Judge Sullivan presided over a couple of status conferences, but the case was reassigned to Judge Quist.

Petitioner filed a motion to dismiss the case. Judge Quist denied the motion on December 23, 2019, and trial was scheduled to commence on January 6, 2020. On that date, Petitioner entered his *nolo contendere* plea. On February 17, 2020, the court sentenced Petitioner as set forth above.

---

[3] The Kent County Circuit Court registers of actions are available at https://www.accesskent.com/CNSearch/searchCase.action (search First Name "Dallas," Last Name "Dyson," and Year of Birth "1977," last visited July 30, 2022). Docket information for the Michigan appellate courts is available at https://www.courts.michigan.gov/case-search/?r=1 (search "Dallas Dyson," select People of MI v. Dallas Dyson, last visited July 30, 2022).

On March 18, 2020, the trial court entered an order appointing attorney Roland Lindh as appellate counsel. On June 22, 2020, attorney Lindh moved to withdraw. During July, Judge Quist entered orders permitting Lindh to withdraw and appointing Charles B. Covello to serve as appellate counsel.

During October of 2020, attorney Covello filed a motion to withdraw as counsel in the Michigan Court of Appeals pursuant to *Anders v. California*, 386 U.S. 738 (1967). In *Anders*, the Supreme Court addressed "the duty of a court-appointed appellate counsel to prosecute a first appeal from a criminal conviction, after that attorney has conscientiously determined that there is no merit to the indigent's appeal." *Id.* at 739. The Court adopted the following procedure:

> The constitutional requirement of substantial equality and fair process can only be attained where counsel acts in the role of an active advocate in behalf of his client, as opposed to that of amicus curiae. The no-merit letter and the procedure it triggers do not reach that dignity. Counsel should, and can with honor and without conflict, be of more assistance to his client and to the court. His role as advocate requires that he support his client's appeal to the best of his ability. Of course, if counsel finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

*Anders*, 386 U.S. at 744. Petitioner opposed the motion to withdraw.

The court of appeals followed the *Anders* procedure. It conducted "a full examination of all the proceedings, [and determined] that the appeal [was] wholly frivolous." *People v. Dyson*, No. 355158 (Mich. Ct. App., Dec. 16, 2020). In that same order permitting counsel to withdraw,

5

the appellate court denied leave to appeal; but the court stayed its order for 28 days to permit Petitioner to raise, *pro per*, any issue or question for the court to consider. *Id.*

Petitioner contends that appellate counsel never provided Petitioner with the trial court transcripts or the motion to withdraw/*Anders* brief. Petitioner filed a *pro per* response to the motion, *see* https://www.courts.michigan.gov/c/courts/coa/case/355158 (last visited July 30, 2022); thus, his suggestion that counsel failed to provide him with the *Anders* materials seems unlikely.

The court of appeals directed attorney Covello to serve the order granting counsel permission to withdraw and the transcripts from the trial court proceedings on Petitioner and to file a proof of service of those materials. *People v. Dyson*, No. 355158 (Mich. Ct. App., Dec. 16, 2020). Counsel filed a proof of service indicating that he had served the order on Petitioner and that the transcripts had been previously served. *See* https://www.courts.michigan.gov/c/courts/coa/case/355158 (last visited July 30, 2022).

Petitioner sought reconsideration of the court of appeals' decision and asked for appointment of new counsel. The court of appeals denied relief by order entered February 5, 2021. *People v. Dyson*, No. 355158 (Mich. Ct. App., Feb. 5, 2021).

The petition indicates that Petitioner was denied the right to assert his first habeas claim—that the prosecutor engaged in misconduct when he dismissed and reinstated the charges and, therefore, judge-shopped—in the Michigan Court of Appeals. It is certainly not impossible that Petitioner could have raised it in the Michigan Court of Appeals in response to the motion to withdraw or as part of his motion for reconsideration; but Petitioner claims he was denied the right to raise the issue in the court of appeals. Accordingly, the Court concludes that he did not raise the issue in the court of appeals.

6

Petitioner filed an application for leave to appeal to the Michigan Supreme Court and a motion to appoint counsel. Petitioner indicates that he raised the judge-shopping issue, his ineffective assistance of appellate counsel issue, and his claim that the court of appeals denied him counsel. By order entered August 3, 2021, the Michigan Supreme Court denied leave to appeal and the motion to appoint counsel. *People v. Dyson*, 962 N.W.2d 301 (Mich. 2021).

On July 28, 2022, Petitioner filed his timely habeas corpus petition raising the same three grounds for relief he raised in the Michigan Supreme Court. The three grounds, however, were combined into one in the petition. They are as follows:

I. Mr. Dyson was the victim of improper judge-shopping.

II. Mr. Dyson was denied the effective assistance of appointed appellate counsel.

III. Mr. Dyson was denied the effective assistance of appellate counsel when the court refused to appoint new counsel following the withdrawal of Petitioner's appointed appellate counsel.

(Pet., ECF No. 1, PageID.5.)

## II.  AEDPA Standard

The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693–94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). "Under these rules, [a] state court's determination that a claim lacks merit precludes federal habeas

7

relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Stermer v. Warren*, 959 F.3d 704, 721 (6th Cir. 2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)) (internal quotation marks omitted)). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams v. Taylor*, 529 U.S. 362, 381–82 (2000); *Miller v. Straub*, 299 F.3d 570, 578–79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37–38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405–06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S. at 316 (quoting *Harrington*, 562 U.S. at 103).

8

Determining whether a rule application was unreasonable depends on the rule's specificity. *Stermer*, 959 F.3d at 721. "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." *Yarborough*, 541 U.S. at 664. "[W]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey v. Mitchell*, 271 F.3d 652, 656 (6th Cir. 2001). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546–547 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

Section 2254(d) limits the facts a court may consider on habeas review. The federal court is not free to consider any possible factual source. The reviewing court "is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 180 (2011). "If a review of the state court record shows that additional fact-finding was required under clearly established federal law or that the state court's factual determination was unreasonable, the requirements of Section 2254(d) are satisfied and the federal court can review the underlying claim on its merits. *Stermer*, 959 F.3d at 721 (citing, *inter alia*, *Brumfield v. Cain*, 576 U.S. 305 (2015), and *Panetti v. Quarterman*, 551 U.S. 930, 954 (2007)).

If the petitioner "satisfies the heightened requirements of § 2254(d), or if the petitioner's claim was never 'adjudicated on the merits' by a state court, 28 U.S.C. § 2254(d),"—for example,

9

if he procedurally defaulted the claim—"AEDPA deference no longer applies." *Stermer*, 959 F.3d at 721. Then, the petitioner's claim is reviewed *de novo*. *Id.* (citing *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003)).

### III. Discussion

#### A. Petitioner suffered no prejudice arising from the prosecutor's alleged judge-shopping

Petitioner's concern that the prosecutor's pursuit of an order of *nolle prosequi* and then almost immediate reinstitution of charges might rise to the level of prosecutorial misconduct is not unreasonable. Professor Joseph A. Thorp decried the practice, explaining:

> The American prosecutor wields the most awesome of the state's powers and operates largely free of judicial oversight. A strong system of deference to prosecutorial discretion gives prosecutors control over every aspect of the charging process: they decide whether, when, where, and which charges should be filed. Savvy prosecutors combine two of these powers to create a new power that far exceeds the sum of its parts: *nolle*-and-reinstitution.
>
> *Nolle*-and-reinstitution occurs when a prosecutor voluntarily dismisses a criminal charge and later reinstates the same charge. Prosecutors often reap strategic advantages from *nolle*-and-reinstitution. They can use it to shop for better forums, dodge discovery sanctions, evade trial court orders, circumvent speedy trial limitations, and coerce guilty pleas. In contrast, defendants often suffer considerable harm when charges against them are dismissed and then reinstated. The practice of *nolle*-and-reinstitution exposes a defendant to re-arrest, prolongs her pre-trial incarceration, and may require her to pay a second bond. *Nolle*-and-reinstitution also jeopardizes a defendant's right to counsel of choice, impairs her trial defense, and erodes her confidence in the court's ability to conduct a fair trial. This combination of consequences tears at the fabric of the adversary system by sabotaging a defendant's rights and enabling the executive to usurp powers properly held by the judicial branch.

Joseph A. Thorp, *Nolle*-And-Reinstitution: Opening the Door to Regulation of Charging Powers, 71 N.Y.U. Ann. Surv. Am. L. 429, 430–31 (2016) (footnotes omitted). Professor Thorp, however, did not call for the wholesale elimination of the *nolle*-and-reinstitution power. Indeed, he offered as an example of a proper use of that power the circumstance where the prosecution depends on

the testimony of the victim, but the victim is not available to testify at the scheduled trial, *id*. at 438, the circumstance that occurred in Petitioner's case.

Although Professor Thorp identified a bevy of evils that might follow from *nolle*-and-reinstitution, Petitioner complains of only one: judge-shopping. The Sixth Circuit Court of Appeals most recently commented on the potential dangers of judge-shopping as follows:

> But contrary to Ashrafkhan's insistence that the government engaged in impermissible "judge shopping," no court has ever held that prosecutorial "judge shopping"—without more—is a per se violation of a defendant's due-process rights. *See Francolino v. Kuhlman*, 365 F.3d 137, 141 (2d Cir. 2004) (holding that "no federal court has held that prosecutorial judge shopping is a *per se* basis for habeas relief" and collecting cases); *United States v. Pearson*, 203 F.3d 1243, 1266 (10th Cir. 2000) (noting "that a certain type of judge-shopping inheres in our federalist system" and that the most important question was simply whether the judge assigned was impartial); *Tyson v. Trigg*, 50 F.3d 436, 442 (7th Cir. 1995) (holding that allowing a prosecutor to choose the trial judge, even if it "lack[s] the appearance of impartiality" is not enough to grant a new trial).
>
> We have also spoken on this issue, although briefly, in two cases. In *Sinito v. United States*, 750 F.2d 512 (6th Cir. 1984), the defendant claimed that he was entitled to a new trial because his case had been "steered" to a particular judge. The judge was assigned according to the local rules of the Northern District of Ohio at the time, which had a case-assignment plan that allowed a "district court judge sitting in Akron [to] exchange a non-Akron case initially assigned to him for an Akron case of the same category initially assigned to a judge sitting in Cleveland, thus facilitating the hearing of Akron cases by a judge in Akron and non-Akron cases by a judge sitting in Cleveland." *Id.* at 514 n.3. Sinito's case had been randomly assigned to a Cleveland-based judge, but pursuant to the case-assignment plan, it was reassigned to an Akron-based judge, Judge Manos. Sinito argued that a clerical error in a previously filed case resulted in Judge Manos being assigned rather than a different Akron judge.
>
> We ultimately rejected Sinito's claim, holding that "[e]ven when there is an error in the process by which the trial judge is selected, or when the selection process is not operated in compliance with local rules, the defendant is not denied due process as a result of the error *unless he can point to some resulting prejudice*." *Id.* at 515 (emphasis added). This is because the rules "governing the assignment of cases are designed as internal housekeeping rules to promote the efficient operation of the district courts; they are not meant to confer rights on litigants." *Ibid*. As such, a defendant alleging an improper judge assignment must claim that the assigned judge was prejudicial. Sinito never claimed any prejudice by his trial judge, and so we affirmed his conviction. *Id.* at 516. One year after *Sinito*, we evaluated another allegation of prosecutorial judge steering in *United States v. Gallo*, 763 F.2d 1504

> (6th Cir. 1985). Gallo was a co-defendant of Sinito's, and he made the same argument on appeal. Our disposition of the issue was the same, and we cited *Sinito* approvingly for the proposition that "a pattern of 'steering' significant criminal cases to a judge of [the prosecution's] choice" does not implicate any due process concerns unless the defendant can raise a particular claim of impartiality to the specific trial judge assigned. *Id.* at 1532.

*United States v. Ashrafkhan*, 821 F. App'x 428, 437–38 (6th Cir. 2020).

Petitioner has not identified any prejudice here and, logically, he cannot. The judge that presided over the disposition of the second prosecution was ultimately the same judge that presided over the first: Judge George Jay Quist. Accordingly, Petitioner's claim is meritless, and he has failed to show that the Michigan Court of Appeals' determination that Petitioner's claim was frivolous is contrary to, or an unreasonable application of, clearly established federal law. Therefore, Petitioner is not entitled to habeas relief on his "judge-shopping" claim.

    **B.**    **Appointed appellate counsel did not render ineffective assistance**

Petitioner next argues that appellate counsel Covello rendered ineffective assistance. Based on the form petition, the typewritten petition, and the memorandum of law, it appears Petitioner might be raising two distinct ineffective assistance claims: (1) counsel was ineffective because he did not press the judge-shopping claim in the Michigan Court of Appeals; and (2) counsel was ineffective because he did not serve the *Anders* brief and lower court transcripts on Petitioner.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. *Id.* at 687.

A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at

12

689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.

Petitioner cannot prevail on his first ineffective assistance claims. As set forth above, his judge-shopping claim is meritless. "Omitting meritless arguments is neither professionally unreasonable nor prejudicial." *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

Petitioner's second ineffective assistance claim fares no better. Certainly, if counsel failed to comply with the requirements imposed by *Anders* and the Michigan Court of Appeals, his failure might well be professionally unreasonable. But the only prejudice that Petitioner identifies as following from the professionally unreasonable conduct is the inability to bring to the court of appeals' attention the judge-shopping claim. Because that claim is meritless, there is still no prejudice and, therefore, no constitutional violation for ineffective assistance of appellate counsel.

### C. The Sixth Amendment did not require the state courts to appoint new appellate counsel for Petitioner

In *Halbert v. Michigan*, 545 U.S. 605 (2005), the Supreme Court declared that indigent Michigan defendants who entered pleas of guilty or *nolo contendere* were entitled to appointed counsel to pursue applications for leave to appeal to the Michigan Court of Appeals. The Supreme Court noted that the right to appointed counsel was not without limit:

> And when a defendant's case presents no genuinely arguable issue, appointed counsel may so inform the court. *See Anders v. California*, 386 U.S. 738, 744

13

> (1967) ("[I]f counsel finds [the] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw," filing "a brief referring to anything in the record that might arguably support the appeal."); Tr. of Oral Arg. 27 ("[I]n a significant percentage of the cases . . . [,] after reviewing the case, the appellate counsel then concludes that there is no merit . . ., at which point then either a motion to withdraw may be filed or . . . the Michigan equivalen[t] of an *Anders* brief.").

*Halbert*, 545 U.S. at 623. Thus, where appointed counsel and the appellate court have generally complied with *Anders*,[4] the right to appointed counsel ends because the state is not required to appoint counsel to pursue a frivolous appeal. *Smith v. Robbins*, 528 U.S. 259, 278 (2000) ("[A]lthough . . . indigents generally have a right to counsel on a first appeal as of right, it is equally true that this right does not include the right to bring a frivolous appeal and, concomitantly, does not include the right to counsel for bringing a frivolous appeal.") (citations and footnote omitted). Because Petitioner has no right to pursue a frivolous appeal, or have appointed counsel to assist him in the pursuit of a frivolous appeal, it was neither inconsistent with, nor contrary to, clearly established federal law for the court of appeals (or the supreme court) to decline to appoint counsel after the court of appeals had determined an appeal would be frivolous. Therefore, Petitioner is not entitled to habeas relief on this claim.

---

[4] Complete compliance with the procedure set forth in *Anders* is not required to satisfy the requirements of due process or equal protection. *See Smith v. Robbins*, 528 U.S. 259, 273 (2000) ("[T]he *Anders* procedure is not 'an independent constitutional command,' but rather is just 'a prophylactic framework' that we established to vindicate the constitutional right to appellate counsel announced in *Douglas*. 481 U.S. at 555. We did not say that our *Anders* procedure was the *only* prophylactic framework that could adequately vindicate this right; instead, by making clear that the Constitution itself does not compel the *Anders* procedure, we suggested otherwise.") (emphasis in original). The key elements of the *Anders* procedure are that counsel determine that an appeal would be frivolous, *Robbins*, 528 U.S. at 277-78, and that the court reach the same conclusion before permitting counsel to withdraw, *id.* at 279-81. Both of those elements were satisfied in Petitioner's case.

14

### IV.     Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that jurists of reason could. . . . conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability. Moreover, although Petitioner has failed to demonstrate that he is in custody in violation of the Constitution and has failed to make a substantial showing of the denial of a constitutional right, the Court does not conclude that any issue Petitioner might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

## Conclusion

The Court will enter a judgment dismissing the petition and an order denying a certificate of appealability.


Dated:   August 9, 2022                                    /s/ Sally J. Berens
                                                           SALLY J. BERENS
                                                           U.S. Magistrate Judge